## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

**EDMOND STEPHENSON,**

      **Plaintiff,**

**v.**                                      **CIVIL ACTION NO.** _2:21-cv-00269_____

**CONSOL ENERGY, INC. and**
**CONSOLIDATION COAL CO.,**

      **Defendants.**

## COMPLAINT

1.      Plaintiff, Edmond Stephenson, brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking equitable remedies for the Defendants' misrepresentations that, if Mr. Stephenson worked for at least ten years in Defendants' coal mines and reached the age of fifty-five, he would be eligible to receive retirement welfare benefits for the rest of his life and the lives of his dependent family members.

2.      Defendants' actions and omissions, as set forth herein, breached their fiduciary duties.

3.      Defendants further failed to timely produce a summary plan description to the Plaintiff when they adopted a superseding retiree welfare benefits plan in 2011.

4.      Plaintiff seeks for this Honorable Court in equity to compel the Defendants to place him in the position he reasonably expected to occupy had the Defendants provided the retiree welfare benefits as they offered and promised to do.

5.      When the Defendants terminated the retiree welfare plan, they provided lump sum transition benefits to some retiree plan participants.  However, Defendants did not provide those transition benefits to the Plaintiff.

6.      In 2014, the Defendants substantially modified the Retiree Welfare Plan, causing a curtailment of coverage for plan participants, including the Plaintiff. In 2015, the Defendants terminated health coverage for all retirees under that plan.

## JURISDICTION AND VENUE

7.      Jurisdiction over Plaintiffs' ERISA claims is founded on the existence of a federal question. This action arises under ERISA, 29 U.S.C. § 1001, *et seq.*, and jurisdiction is conferred pursuant to 29 U.S.C. § 1132.

8.      Venue is proper in this District pursuant to ERISA, 29 U.S.C. § 1132(e)(2), because this District is where the actions that form the basis for this Complaint took place.

## PARTIES

9.      Plaintiff Edmond Stephenson was at all times relevant a resident of Clay County, West Virginia.

10.     Plaintiff resides in Clay County with his wife, Hilda, who was at all times relevant dependent on him financially. Plaintiff also resided with his son, Nathaniel, who was dependent on him during relevant times.

11.     At all relevant times, Defendants CONSOL Energy, Inc. ("CONSOL") and Consolidation Coal Company ("Consolidation Coal") were Delaware corporations with their principal places of business located at 1000 CONSOL Energy Drive Canonsburg, Pennsylvania 15317.

12.     At all relevant times, Defendants, on their own and in concert with Fola Coal Company, LLC, a wholly-owned subsidiary of CONSOL, operated one or more surface coal mines in or around the area known as Bickmore, Clay County, West Virginia, at which the Plaintiff was employed.

## STATEMENT OF FACTS

13.     When CONSOL took over the Fola Coal operations in 2007 and hired the workforce as non-union employees, CONSOL's upper management came down from Pennsylvania to explain the fringe benefits, including with written and oral recitations of CONSOL's promise to provide lifetime retirement

welfare benefits coverage for miners and their dependents, specifically noting that the lifetime duration of retiree welfare benefits provided by Fola Coal would remain the same under CONSOL.

14.    In 2007, and in periodic meetings subsequently during the course of the Plaintiffs' employment with CONSOL, CONSOL's safety directors and upper management stated that the employees' lifetime retirement health care coverage would continue to be the same type of coverage that they were receiving as active workers.

15.    CONSOL described the lifetime health coverage and other benefits to its non-union workers in writing: "This is a better deal than the UMWA negotiated in the national contract. AND REMEMBER, IT DIDN'T COST YOU A PENNY IN DUES OR ASSESSMENTS."  CONSOL's upper management also made representations of this nature orally to Plaintiff.

16.    As Defendants presented them to Plaintiff, the terms of the Retiree Welfare Plan included the promise that, after reaching age fifty-five and accruing ten years of service to Defendants, the Plaintiffs would continue to receive the same or similar benefits that they received, and paid in to support, as active workers. These benefits included approximately $2,250.00 annually in a Health Reimbursement Account, which was available to each of the Retiree Welfare Plan participants to cover their deductibles or copayments under their healthcare plan, and for similar purposes.

17.    The Defendants regularly sent their upper human resource managers to explain to the Plaintiff and his coworkers that the retiree welfare benefits would vest upon such time as the Plaintiff reached the threshold for retirement eligibility (*i.e.*, ten years of accredited service and age fifty-five) and that those same benefits would remain available for the lives of the miners and their dependents (*e.g.*, spouses for life).

18.    The Defendants periodically held meetings to explain the healthcare benefits to the Plaintiff at the Armory in Summersville, West Virginia, and at the Fola mine sites where the Plaintiff worked, among other sites and offices of CONSOL. At these periodic meetings Defendant consistently represented the lifetime nature of the retirement welfare benefits, which would vest after Plaintiff reached age fifty-five and obtained ten years of service.

19.     The Plaintiff relied on those representations by continuing to work for the Defendants for at least ten years, and by foregoing numerous opportunities to advance his economic standing, such as by seeking other employment with entities that provided retirement welfare benefits.

20.     During the Plaintiff's years as an active employee for the Defendants, the Defendants withheld portions of the Plaintiff's wages as premiums to cover the costs of the Retiree Welfare Plan, and/or set aside accrued revenues from the production and sale of coal, to self-insure for the cost of the Retiree Welfare Plan.

21.     During retirement, the Plaintiff paid premiums to the Defendants in order to receive welfare benefits under the Plan.

22.     On February 14, 2013, Consol laid off the Plaintiff.

23.     At that time, Consol's upper management told the Plaintiff that if he went to work elsewhere and later wanted to activate his retiree welfare benefits with Consol, he would remain able to do so at any time in his future. Upper management stated that his retiree welfare benefits would be available to him throughout his life, and that he should "feel at ease" going to work elsewhere and waiting to activate his retirement because the retirement welfare benefits would remain available to him and his dependents for the rest of his life.

24.     Shortly thereafter, Plaintiff went to work for another company known as Logan Corp., where he received health insurance as part of his compensation.

25.     On or about September 30, 2014, the Defendants sent plan participants a letter stating that the Consol non-union Retiree Welfare Plan "will terminate December 31, 2019."

26.     However, the Plaintiff did not receive that letter sent on September 30, 2014.

27.     On or about February 12, 2015, Plaintiff was laid off from Logan Corp.

28.     Following that layoff, Mr. Stephenson and his wife, Hilda, called CONSOL to request to activate his retirement and enroll in the Retiree Welfare Plan.

29.     When they first called CONSOL, they were referred to Craig Campbell for the purpose of confirming the previous promise they could re-enroll in the Retiree Welfare Plan.

30.     On or about April 6, 2015, Craig Campbell called back the Plaintiff and stated that CONSOL would activate his retirement so long as he continued paying the premiums.

31.     Plaintiff did resume paying the premiums and CONSOL reinstated Plaintiff's insurance.

32.     On or about June 16, 2015, CONSOL wrote to the Plaintiff to inform him that his retiree welfare benefits would be terminating on December 31, 2015.

33.     Upon information and belief, CONSOL informed the retirees of the 2014 curtailment of the Retiree Welfare Plan, it provided a cash transition to the active workers that was intended to reflect the value of their accrued retiree welfare benefits.

34.     Upon information and belief, for those Retiree Welfare Plan participants who had retired on or after September 30, 2014, CONSOL provided a transition benefit equal to 80% of the value of the transition benefits that CONSOL had paid to the active employees whose Retiree Welfare Plan participation was terminated in 2014.

35.     However, CONSOL did not offer any sort of transition benefit to the Plaintiff.

36.     Plaintiff discovered that the Defendants' written and oral promises of lifetime retiree welfare benefits were grossly misrepresentative when the Defendants notified Plaintiff on or about June 16, 2015 they were terminating all retiree welfare benefits by December 31, 2015.

37.     Plaintiff was not aware more than six years prior to the filing of this Complaint, and did not possess information from which he ought to have been aware that the Defendants provided transition benefits to other retiree welfare plan participants whose benefits terminated in 2015.

***Defendants Represented a Promise or Offer of Lifetime Retiree Welfare Benefits, and Received Value from Plaintiff in Exchange for that Offer***

38.     The Defendants' aforementioned oral and written offers and promises regarding the lifetime retirement welfare benefits were accepted by the Plaintiff when he continued working for the Defendants based in substantial part on those offers and promises of lifetime benefits.

39.     The Plaintiff paid consideration for the Defendants' offers of lifetime benefits by paying premiums through the wages that the Defendants withheld from Plaintiff's paystubs and by paying the individual premium contributions that the Plaintiff made to the Defendants during his retirement.

40.     The Defendants represented to Plaintiff, and other employees, that as a benefit of their continued employment, their health benefits would continue, upon reaching ten years of service and upon attaining the age of fifty-five, with coverage similar to that which was provided to them while they were active employees---*i.e.*, that the welfare benefits would vest after the Plaintiffs reached age fifty-five and garnered ten years of work service for CONSOL, its predecessors, and/or affiliates, and that those benefits would continue for the remainder of the lives of the miners and their dependents.

41.     Upon information and belief, the Defendants reserved funds from the accrued revenues of their various subsidiaries and affiliates in order to fund the Retirement Welfare Plan. .

***Defendants Failed to Provide Summary Plan Descriptions (SPDs) to Plaintiff Regarding the Retiree Welfare Benefit Plan Adopted in 2011***

42.     Defendants promulgated a new Retiree Welfare Plan in 2011.

43.     The Plaintiff was a participant in that plan at the time that it was adopted because it was offered by his employer and he was eligible or could become eligible to receive benefits from that plan.

44.     Defendants did not provide Plaintiff with an SPD for the Retiree Welfare Plan.

45.     Defendants did not provide Plaintiff with an SPD for the Retiree Welfare Plan within 90 days after he became a participant in that plan.

46.     Upon information and belief, the SPD for the Retiree Welfare Plan contained reservations of rights to terminate the plan.

47.     Plaintiff did not receive the chance to review and evaluate the reservations of rights contained in the SPD because Defendants did not disclose it to the Plaintiff within the time frame required by ERISA.

***Defendants' Misrepresentations and Omissions Were Material, and Defendants' Failure to Pay Transitions Benefits to All Plan Participants on an Equitable Basis Conferred Financial Benefits on the Defendants at the Expense of Plaintiff and Other Plan Participants.***

48.     In misrepresenting the scope and nature of the Retiree Welfare Benefits while failing to produce the SPD for the Retiree Welfare Plan within the timeframe required by ERISA, the Defendants concealed material information about the plan from the Plaintiff while affirmatively misrepresenting the value, scope, and duration of the benefits for which the Plaintiff was or might become eligible under the Plan.

49.     Upon information and belief, the above misrepresentations offered significant potential for financial gain to Defendants. By offering incomplete, inaccurate, and misleading disclosures, Defendants were able to induce employees to forego unionization, accept lower wages, continue working for Defendants, and forego other employment, in reliance on the promise of lifetime benefits, all of which redounded to the Defendants' financial advantage.

50.     Upon information and belief, the Defendants did not allocate sufficient amounts of accrued revenue to cover the costs of the promised lifetime benefits, and the Defendants ultimately terminated the Retirement Welfare Plan and liquidated the self-insured plan to generate a profit for CONSOL.

51.     At all relevant times, CONSOL Energy Inc. has been the Plan Sponsor of the Retirement Welfare Plan, within the meaning of ERISA, 29 U.S.C. § 1002(16)(b) because it has been so designated in the governing plan instruments.

52.     At all relevant times, the Vice President of Human Resources at CONSOL has been the Plan Administrator of the Retiree Welfare Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(a), because he has been so designated in the governing plan instruments.

53.     Plaintiff is entitled to bring this civil action to restore healthcare benefits, to enjoin any act or practice which violates any provision of ERISA or the terms of the Plan, to disgorge the financial benefits of the Defendants' breach of their fiduciary duties, to disgorge the profits therefrom, and/or to obtain other appropriate equitable relief, including but not limited to plan reformation and a surcharge against the Defendants for the value of benefits terminated and the premiums accepted by CONSOL.  *See* 29 U.S.C. § 1132(a)(1), (2), (3).

### FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
### 29 U.S.C. § 1104(a)(1)(a)(i)

54.     Plaintiff incorporates the preceding paragraphs by reference.

55.     At all relevant times, Defendants were fiduciaries to the Retiree Welfare Plan as defined in 29 U.S.C. § 1002(21).

56.     The Defendants are fiduciaries with respect to the terms of enrollment and the scope of benefits in the Retiree Welfare Plan because they exerted control or authority over the management, administration, and/or disposition of the terms or assets of that plan, and because they appointed other fiduciaries or apparent fiduciaries, including Gerald Kowzan, Chase Elswick, Craig Campbell, and other salaried employees to interpret, apply, confirm, and control those same terms.

57.     29 U.S.C. § 1104(a)(1) requires that a fiduciary must discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan.

58.     By misrepresenting the lifetime nature of retiree welfare benefits, failing to disclose the Retiree Welfare SPD, and refraining from providing Plaintiff with the same or comparable transition benefits provided to other Retiree Welfare Plan participants, Defendants acted in ways that were financially valuable for Defendants but were to the Plaintiff's detriment as a plan participant.

59.     When the Defendants represented to the Plaintiff that the Retiree Welfare Plan would provide health benefits for the lifetimes of the Plaintiff and his dependents, the Defendants misrepresented the Plan.

60.     When the Defendants accepted the Plaintiff's continued employment in exchange for the promise to provide Retiree Welfare Plan benefits for life, the Defendants fraudulently induced the Plaintiffs into accepting the Retiree Welfare Plan.

61.     When the Defendants failed to produce the SPD for the Retiree Welfare Plan, they fraudulently concealed the full terms of the plan as contained in the SPD.

62.     When the Defendants accepted premiums from the Plaintiff as consideration for enrollment in the plan on the basis of the promise of lifetime benefits, the Defendants became bound by their promise to provide lifetime welfare benefits and further profited from Plaintiff's reliance on their representations regarding the Plan.

63.     Defendants thus violated ERISA, 29 U.S.C. § 1104(a)(1) by breaching their fiduciary duties when they took action to increase revenue for the corporate sponsor of the plan by concealing the SPD which contained important plan terms, by misrepresenting the benefits to the plan beneficiaries, and by providing transition benefits to some Retiree Welfare Plan participants but not to the Plaintiff---thus acting for the Defendants' own financial benefit and not exclusively for the purpose of providing benefits to plan participants and their beneficiaries.

64.     Defendants' breach of their fiduciary duty warrants the award in equity of plan reformation to provide Plaintiff with transition benefits of comparable value to those provided to other Retiree Welfare Plan participants.

65.     Defendants' breach of their fiduciary duty warrants the award of equitable surcharge in the amount of premiums deducted from Plaintiff's wages and received from Plaintiff as premium payments in retirement, all of which Plaintiff paid pursuant to Defendant's misrepresentations, omissions, and fraudulent concealment about the nature, scope, and duration of the Retiree Welfare Plan.

### SECOND CAUSE OF ACTION
**Estoppel**
**based on Defendants' Misrepresentations and Concealment**
**29 U.S.C. 1132(a)(1)(B)**

66.     Plaintiff incorporates the preceding paragraphs by reference

67.     Plaintiff is entitled to pursue estoppel pursuant to 29 U.S.C. 1132(a)(1)(B) .

68.     Defendants' misrepresentations and concealment of the reservation of rights warrant equitable estoppel of Defendants from relying on reservations of rights in the SPD to deny retiree welfare

benefits to Plaintiff,  and from denying Plaintiff's claims for coverage of his costs arising from medical, dental, prescription drug, vision costs, or from denying the claims of Plaintiff's dependents for life insurance that Defendants had represented they would provide through the Retiree Welfare Plan.

**THIRD CAUSE OF ACTION**
**Failure to Meet Duty of Disclosure with Respect to Summary Plan Descriptions**
**29 U.S.C § 1021(a)(1)**

69.     Plaintiff incorporates the preceding paragraphs by reference.

70.     ERISA, 29 U.S.C. § 1021, requires that plan administrators provide all plan participants and beneficiaries with accurate SPDs, conforming to the requirements of 29 U.S.C. § 1022(a).

71.     29 U.S.C. § 1022(a)(1) requires that SPDs be sufficiently accurate and comprehensive to reasonably apprise participants of their rights and obligations under the plan.

72.     Defendants provided Plaintiff with no SPDs or with incomplete SPDs for the Retiree Welfare Plans.

73.     The Plaintiff did not receive the Retiree SPD at all --- and certainly not before he had reached at least age fifty-five and had attained ten years of accredited service.

74.     By failing to produce SPDs with complete information about benefits that the plan confers upon retirement, Defendants concealed information that could have helped Plaintiff to realize the Defendant's misrepresentations about Retiree Welfare Benefits.

75.     By failing to provide accurate or comprehensive SPDs, Defendants violated their duty of disclosure under 29 U.S.C. § 1021.

76.     Plaintiff is entitled to bring this civil action to enjoin any act or practice which violates any provision of ERISA or the terms of the Plan, and/or to obtain other appropriate equitable relief.  *See* 29 U.S.C. § 1132(a)(3).

**FOURTH CAUSE OF ACTION**
**Failure to Provide an Adequate Summary Plan Description in a Timely Manner**
**29 U.S.C. § 1022(a), 24(b)(1)**

77.     Plaintiff incorporates the preceding paragraphs by reference.

78.     ERISA requires that the summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)

79.     29 U.S.C. § 1024(b)(1) requires that plan administrators and sponsors produce an accurate copy of the Summary Plan Description to plan participants and beneficiaries "within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits.".

80.     Defendants failed to provide an accurate Summary Plan Description to plan participants and beneficiaries, including Plaintiff, for many years after they were covered by the Retiree Welfare Plan.

81.     Because Defendants failed to provide an accurate Summary Plan Description within the required 90-day period, they violated § 1024(b)(1) of ERISA.

82.     Defendants' failure to distribute an SPD for the Retiree Welfare Plan violates 29 U.S.C. § 1022(a) and the SPD requirements contained therein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court:

I.     Enjoin Defendants from any further violation of their fiduciary duties under ERISA by withholding retiree welfare benefits to the Plaintiff;

II.    Estop the Defendants from relying on reservations of rights in the SPD to deny retiree welfare benefits to Plaintiff, and from denying the claims of the Plaintiff and his dependents for coverage of enumerated costs (medical, dental, prescription drug, vision, and life insurance) at levels that Defendants had represented they would provide through the Retiree Welfare Plan, *i.e.* at levels competitive with or better than those provided to retirees through the United Mine Workers of America under their national contract.

III.   Compel the Defendants to honor the terms of the Retiree Welfare Plan, requiring Defendants to provide Plaintiff and their beneficiaries with the lifetime benefits as set forth herein, or require the

Defendants to pay a surcharge for the present value of the benefits that they terminated for the Plaintiffs;

IV.    Issue an order of restitution, compelling Defendants to restore the $2,250.00 in annual healthcare spending funds to which the Plaintiffs were entitled in each year subsequent to the termination of benefits and to return the premiums that the Defendants accepted for the terminated lifetime benefits;

V.    Award such other equitable or remedial relief as may be appropriate, including disgorgement of the financial benefit obtained by the Defendants through their breach of their fiduciary duties;

VI.    Award to Plaintiff and his attorneys all reasonable attorney fees, costs, and expenses incurred or earned by them, respectively, pursuant to 29 U.S.C. § 1132(g); and

VII.    Grant any such other and further relief as this Court may deem equitable and just.

**Edmond Stephenson,**
**PLAINTIFF,**
**BY COUNSEL**,

  /s/ Samuel B. Petsonk
Samuel B. Petsonk (State Bar ID No. 12418)
Petsonk PLLC
PO Box 1045
Beckley, WV 25802
(304) 900-3171 (phone)
(304) 986-4633 (fax)
sam@petsonk.com

 /s/  Bren J. Pomponio
Bren J. Pomponio (WVSB # 7774)
Laura Davidson (WVSB #13832)
Mountain State Justice, Inc.
1217 Quarrier Street, Suite
Charleston, West Virginia 25301
(304) 344-3144
(304) 344-3145 (fax)
bren@msjlaw.org
laura@msjlaw.org